Easterbrook, Circuit Judge.
 

 In Indiana "[a] person who intentionally acquires, receives, sells, or transfers fetal tissue commits unlawful transfer of fetal tissue, a Level 5 felony."
 
 Ind. Code § 35-46-5-1
 
 .5(d). A federal district court held
 that several terms in this statute are unconstitutionally vague and that it must be treated as if it read: "A person who intentionally sells fetal tissue commits unlawful transfer of fetal tissue, a Level 5 felony."
 
 289 F.Supp.3d 905
 
 , 934-35 (S.D. Ind. 2018). The district court also held that a definitional clause is invalid. As enacted, § 35-46-5-1.5(b) reads: "As used in this section, 'fetal tissue' includes tissue, organs, or any other part of an aborted fetus." This must be treated as if it read: "As used in this section, 'fetal tissue' includes tissue or organs of an aborted fetus." The district court thus held that the words "acquires", "receives", and "transfers", and the phrase "any other part", are too uncertain to have legal force. If that is right, then big chunks of the legal system are invalid, because those words are ubiquitous in statutes, regulations, and judicial opinions.
 

 This case began when Indiana University and three of its faculty members filed this suit, under
 
 42 U.S.C. § 1983
 
 , against the state's prosecuting attorneys in two counties. They asked the district court to enjoin the prosecutors from attempting to enforce any part of § 35-46-5-1.5. According to the plaintiffs, the statute not only is excessively vague but also violates the First Amendment by blocking one kind of medical research, takes the University's property without just compensation, violates the Equal Protection Clause by distinguishing fetal tissue produced by abortions from that produced by miscarriages, and violates the dormant Commerce Clause by regulating the interstate market in fetal tissue. Plaintiffs do not contend that the statute imposes an undue burden on any woman who seeks to have an abortion, nor would they have standing to make such an argument. Instead the three faculty-member plaintiffs contend that the statute interferes with medical scholarship.
 

 As we have recounted, the district court found four words or phrases to be unconstitutionally vague. It rejected plaintiffs' theories under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. And it did not come to a conclusion with respect to the Takings Clause or the Commerce Clause, reasoning that because it could not determine what the statute means, it could not properly analyze it under either of those provisions. It then entered a permanent injunction in plaintiffs' favor and closed the case. Both sides have appealed. Plaintiffs want the whole statute enjoined, while defendants want the injunction vacated and the suit dismissed.
 

 Justiciability is an initial problem. Indiana University, which is part of the State of Indiana, see
 
 Haynes v. Indiana University
 
 ,
 
 902 F.3d 724
 
 , 731 (7th Cir. 2018), has sued two prosecutors who carry out state powers. The two defendants have been sued in their official capacities, which means that they must be treated as the State of Indiana.
 
 Will v. Michigan Department of State Police
 
 ,
 
 491 U.S. 58
 
 ,
 
 109 S.Ct. 2304
 
 ,
 
 105 L.Ed.2d 45
 
 (1989). There is considerable doubt that federal courts are authorized to adjust grievances among different parts of a state government. See, e.g.,
 
 Illinois v. Chicago
 
 ,
 
 137 F.3d 474
 
 (7th Cir. 1998) (a state can't sue part of itself);
 
 Arlington Heights v. Regional Transportation Authority
 
 ,
 
 653 F.2d 1149
 
 , 1150-53 (7th Cir. 1981) (part of a state can't sue the state);
 
 Branson School District RE-82 v. Romer
 
 ,
 
 161 F.3d 619
 
 , 628 (10th Cir. 1998) (collecting cases). Cf.
 
 South Bend v. South Bend Common Council
 
 ,
 
 865 F.3d 889
 
 (7th Cir. 2017) (a city can't sue a part of itself). The suit is saved, however, by the fact that three faculty members are plaintiffs. All three have standing to litigate in their personal capacities, and with one exception (to which we return) they present all of the complaint's legal theories.
 

 We start with vagueness, the Due Process Clause theory on which the district court based its injunction, and then address the other four theories.
 

 The Constitution requires criminal statutes to have a core of understandable meaning. See, e.g.,
 
 Johnson v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 2551
 
 ,
 
 192 L.Ed.2d 569
 
 (2015) ;
 
 United States v. Powell
 
 ,
 
 423 U.S. 87
 
 ,
 
 96 S.Ct. 316
 
 ,
 
 46 L.Ed.2d 228
 
 (1975) ;
 
 Nash v. United States
 
 ,
 
 229 U.S. 373
 
 ,
 
 33 S.Ct. 780
 
 ,
 
 57 L.Ed. 1232
 
 (1913). Some uncertainty at the margins does not condemn a statute. It is therefore hard to see what can be wrong with words such as "acquires," which people use and understand in normal life. A person "acquires" a car by buying it or leasing it or receiving it as a gift from a parent or spouse-or by stealing it. Even a protean word such as "reasonable" has enough of a core to allow its use in situations where rights to speak are at issue. See
 
 Thomas v. Chicago Park District
 
 ,
 
 534 U.S. 316
 
 , 324,
 
 122 S.Ct. 775
 
 ,
 
 151 L.Ed.2d 783
 
 (2002). Words such as "acquire" are materially (another protean legal word) more definite than "reasonable."
 

 Johnson
 
 shows that uncertainty so pervasive that most of a law's potential applications are impossible to evaluate may rule out enforcement. But the district court did not deny that each of the words "acquires", "receives", and "transfers", and the phrase "any other part", has a substantial, understandable core. Instead the judge worried about the periphery.
 

 Take "transfers." The judge thought it hard to know whether a medical researcher "transfers" fetal material by passing a pipette containing fetal tissue to someone else at the same laboratory bench.
 
 289 F.Supp.3d at 920
 
 . Or take the phrase "any other part." Although this ensures that the statute covers
 
 every
 
 part of a fetus, the judge thought it hard to say how things work at the level of individual cells or strands of DNA. Suppose someone in Washington state (from which much of Indiana University's fetal tissue comes) extracts a few cells from an aborted fetus and uses them to create a line of stem-cell tissue, exemplars of which (dozens of generations later) are transferred to a researcher in Indiana. Is anything
 
 derived from
 
 fetal tissue included in the phrase "any other part"? The judge did not see a clear answer.
 
 Id
 
 . at 918-19. These and similar open questions led the judge to deem the words and phrase unconstitutional.
 

 The two prosecutors did not help their defense by professing to see answers to these and similar questions. They assured the judge that
 
 of course
 
 stem cells derived from fetal tissue are not "any other part" of a fetus. They asserted that moving a pipette across a lab bench is
 
 of course
 
 not a "transfer" of fetal tissue, because "transfer" means "convey ownership." That's implausible. Federal statutes forbid the transfer of heroin and other contraband, see, e.g.,
 
 21 U.S.C. § 841
 
 (a)(1), and judges implementing such laws do not condition their application on a change of ownership; those laws apply to people who act as agents as well as to principals. The prosecutors also asserted that placental or umbilical cord tissue is
 
 of course
 
 not "any other part" of a fetus. Maybe: The placenta is an independent organ and so may be outside the statutory scope, but the statute does not address the topic. Prosecutors can't offer definitive interpretations of criminal laws, and one prosecutor can't bind a successor in office. More: Indiana has 90 other counties, whose prosecutors may have different ideas about the statute's scope. The district judge was right to say that, if the prosecutors' assurances are all the plaintiffs have to go on, they are at needless risk.
 

 Yet although prosecutorial assurances should not set anyone's mind at rest, the legal system offers a way to work out the uncertainties that lurk at every statute's periphery: the judiciary. Resolving edge questions is a principal role of the courts. If the district court's approach is correct, then every time a court needs to decide a tough question about just how far a statute reaches, it should declare the law unconstitutional. That is fundamentally inconsistent with the Supreme Court's approach, under which a core of meaning is enough to reject a vagueness challenge, leaving to future adjudication the inevitable questions at the statutory margin.
 

 A federal district judge cannot definitively interpret
 
 Ind. Code § 35-46-5-1
 
 .5, but the state judiciary can do so. Declaratory judgments are available in Indiana under Ind. Trial Rule 57 and
 
 Ind. Code § 34-14-1-1
 
 . Any medical researcher can file a suit with the theme: "I want to do X and fear that I will be prosecuted, so please give me a declaratory judgment that X is lawful." Yet none of the plaintiffs has filed such a suit seeking assurances about the scope of § 35-46-5-1.5. Instead of using a readily available state-law remedy for unwelcome risk, they asked a federal court to blot the law from the books. That's not how uncertainty should be addressed.
 

 We have held this already about uncertainty under Indiana law. Indiana forbids judges, and candidates for judicial office, from making any public commitment "inconsistent with the impartial performance of the adjudicative duties of judicial office". The scope for debate about the meaning of that clause puts to shame any uncertainty about the meaning of
 
 Ind. Code § 35-46-5-1
 
 .5, but we held the language valid, even when rights to speak are at stake-not because it is clear, but because the state offers a process to resolve debatable issues.
 
 Bauer v. Shepard
 
 ,
 
 620 F.3d 704
 
 , 715-17 (7th Cir. 2010). We explained (
 
 id
 
 . at 716-17 ):
 

 Plaintiffs want us to deem the law vague by identifying situations in which state officials
 
 might
 
 take an untenably broad reading of the [language], and then predicting that they
 
 will
 
 do so. It is far preferable, however, and more respectful of our judicial colleagues in Indiana, to assume that they will act sensibly and resolve the open questions in a way that honors candidates' rights under the first amendment.
 

 When a statute is accompanied by [a] system that can flesh out details, the due process clause permits those details to be left to that system. Parts of the Hatch Act are every bit as vague as the [language here], but in [
 
 Civil Service Commission v. Letter Carriers
 
 ,
 
 413 U.S. 548
 
 [
 
 93 S.Ct. 2880
 
 ,
 
 37 L.Ed.2d 796
 
 ] (1973) ] the Court held that problems of implementation could be tackled by administrative adjudication.
 
 413 U.S. at 580
 
 [
 
 93 S.Ct. 2880
 
 ]. Similarly, in
 
 Parker v. Levy
 
 ,
 
 417 U.S. 733
 
 [
 
 94 S.Ct. 2547
 
 ,
 
 41 L.Ed.2d 439
 
 ] (1974), the Court held that an article of the Uniform Code of Military Justice making it a court-martial offense to engage in "conduct unbecoming an officer and a gentleman" is not unconstitutionally vague, because military tribunals have elaborated on what is "unbecoming" for an officer and made it more specific than the unadorned words. The National Labor Relations Act is full of vague terms [such as "unfair labor practice"], and the National Labor Relations Board has yet to make all of them concrete, but no one supposes that the whole Act could be chucked out. The Justices have been chary of holding laws unconstitutional "on their face" precisely because they have recognized that vagueness will be reduced through a process of interpretation.
 

 This is equally true of
 
 Ind. Code § 35-46-5-1
 
 .5. Declaratory-judgment actions can resolve ambiguities with limited (if any) risk to medical researchers.
 

 One thing the state judiciary might do-in addition to resolving concrete disputes such as the coverage of cells derived from fetal tissue-is read the word "intentionally" in § 35-46-5-1.5(d) to protect researchers who do not subjectively understand that they are violating the law. That is what the Supreme Court did in
 
 Screws v. United States
 
 ,
 
 325 U.S. 91
 
 ,
 
 65 S.Ct. 1031
 
 ,
 
 89 L.Ed. 1495
 
 (1945), to save what is now codified as
 
 18 U.S.C. § 242
 
 , which one might classify as the ultimately vague criminal statute. (It forbids any act under color of law that deprives anyone of any constitutional right.) This potential for risk reduction through interpretation, plus the fact that all of the contested terms have a substantial core of ascertainable meaning, leads us to reject the district court's vagueness holding.
 

 Our dissenting colleague calls our approach "a novel variation on
 
 Pullman
 
 abstention" (below at 544), but it is neither novel nor a form of abstention. It reflects the Supreme Court's holdings in
 
 Letter Carriers
 
 ,
 
 Parker
 
 , and many other decisions, such as
 
 Rose v. Locke
 
 ,
 
 423 U.S. 48
 
 ,
 
 96 S.Ct. 243
 
 ,
 
 46 L.Ed.2d 185
 
 (1975), that when considering whether statutory terms are too vague a federal court must take into account how they have been interpreted and applied.
 
 Johnson
 
 is an example. The Justices declared a statute unconstitutionally vague only after this process of interpretation had been used for more than 20 years without curtailing uncertainty. For Indiana's fetal-tissue statute, by contrast, the process has not even begun. Whether the process of interpretation is administrative (as in
 
 Letter Carriers
 
 and
 
 Bauer
 
 ) or judicial (as in
 
 Parker
 
 ,
 
 Rose
 
 , and
 
 Johnson
 
 ) does not matter. What does matter is whether the process can answer important questions about the statute's scope.
 

 Plaintiffs believe that, if they sue in federal court before the state judiciary has had a chance to interpret state law, they can ensure that the state never gets that chance.
 
 Akron v. Akron Center for Reproductive Health, Inc.
 
 ,
 
 462 U.S. 416
 
 , 451-52,
 
 103 S.Ct. 2481
 
 ,
 
 76 L.Ed.2d 687
 
 (1983), used vagueness doctrine in that fashion without citing
 
 Letter Carriers
 
 ,
 
 Parker
 
 , or
 
 Rose
 
 .
 
 Akron
 
 was overruled by
 
 Planned Parenthood of Pennsylvania v. Casey
 
 ,
 
 505 U.S. 833
 
 ,
 
 112 S.Ct. 2791
 
 ,
 
 120 L.Ed.2d 674
 
 (1992), and we are not aware of any other decision by the Supreme Court that has used vagueness doctrine to prevent the state judiciary from having even a chance to give the law a construction that will produce adequate clarity.
 

 Thus we arrive at the four theories that are the subjects of plaintiffs' cross-appeal.
 

 The parties agree that the statute does not burden a suspect class or affect a fundamental right, so the rational-basis standard applies to the equal-protection theory. The district court held that ethical considerations support a distinction between fetal tissue obtained from abortions and tissue obtained from miscarriages.
 
 289 F.Supp.3d at 931-33
 
 . There is a moral debate about abortion and no equivalent debate about miscarriages. The Supreme Court wrote in
 
 Washington v. Glucksberg
 
 ,
 
 521 U.S. 702
 
 , 731,
 
 117 S.Ct. 2258
 
 ,
 
 138 L.Ed.2d 772
 
 (1997), that "[t]he State ... has an interest in protecting the integrity and ethics of the medical profession." Cf.
 
 Cavel International, Inc. v. Madigan
 
 ,
 
 500 F.3d 551
 
 (7th Cir. 2007) (ethical considerations support a ban on slaughtering horses for human consumption). Plaintiffs stress that under
 
 Roe v. Wade
 
 ,
 
 410 U.S. 113
 
 , 158,
 
 93 S.Ct. 705
 
 ,
 
 35 L.Ed.2d 147
 
 (1973), and its successors, a fetus is not a
 "person." See also
 
 Planned Parenthood of Indiana and Kentucky, Inc. v. Commissioner of Indiana State Department of Health
 
 ,
 
 888 F.3d 300
 
 , rehearing en banc denied,
 
 917 F.3d 532
 
 ,
 
 2018 WL 3655854
 
 ,
 
 2018 U.S. App. LEXIS 17676
 
 (7th Cir. June 25, 2018), petition for certiorari pending, No. 18-483. But that does not eliminate the possibility of serious debate about when, if at all, it is ethical to perform medical experiments on aborted fetal tissue. The rational-basis standard does not require much in the way of justification, see
 
 FCC v. Beach Communications, Inc
 
 .,
 
 508 U.S. 307
 
 , 314-15,
 
 113 S.Ct. 2096
 
 ,
 
 124 L.Ed.2d 211
 
 (1993), and we agree with the district court that the statute survives an equal-protection challenge. Indiana's statute may or may not be sensible-for even persons who find abortion immoral must recognize that neurological research using fetal tissue can save innocent lives-but choosing sides in an ethical debate does not condemn a law.
 

 The First Amendment argument is a non-starter. The statute regulates conduct, not speech. See
 
 Clark v. Community for Creative Non-Violence
 
 ,
 
 468 U.S. 288
 
 ,
 
 104 S.Ct. 3065
 
 ,
 
 82 L.Ed.2d 221
 
 (1984). True, plaintiffs want to use fetal tissue in research that could lead to speech, in classrooms or research papers. But a desire to obtain an
 
 input
 
 into speech does not convert regulation of conduct into regulation of speech. Surely plaintiffs do not think that researchers at Indiana University are entitled to blow up a commercial airliner, or administer dangerous pathogens to patients in the University's hospital, just so that they can observe the results and write down their findings. Nor do plaintiffs think that they are entitled to steal pens, paper, and computers from the local Office Depot so that they can write articles at lower cost. Plaintiffs assert that the statute casts "a pall of orthodoxy over the classroom", but it does not. They can say, write, and teach anything they want. They can refer to results generated by work done on aborted fetal tissue in other states and nations. But they cannot treat enforcement of rules about conduct as equivalent to prohibitions of speech. See
 
 Rumsfeld v. Forum for Academic & Institutional Rights, Inc
 
 .,
 
 547 U.S. 47
 
 ,
 
 126 S.Ct. 1297
 
 ,
 
 164 L.Ed.2d 156
 
 (2006) (Solomon Amendment does not regulate speech).
 

 Plaintiffs contend that Indiana's law violates the Commerce Clause because much of the tissue they seek to use comes from other states. Yet the law does not discriminate against interstate commerce; it applies equally to fetal tissue from Indiana and fetal tissue from Iowa, Illinois, or Indonesia. Nor does it bear more heavily on interstate commerce as a practical matter, the subject of
 
 Pike v. Bruce Church, Inc
 
 .,
 
 397 U.S. 137
 
 ,
 
 90 S.Ct. 844
 
 ,
 
 25 L.Ed.2d 174
 
 (1970). We have held repeatedly that outright bans on particular items do not offend the dormant Commerce Clause. See, e.g.,
 
 National Paint & Coatings Association v. Chicago
 
 ,
 
 45 F.3d 1124
 
 (7th Cir. 1995) (spray paint);
 
 Park Pet Shop, Inc. v. Chicago
 
 ,
 
 872 F.3d 495
 
 (7th Cir. 2017) (dogs from puppy mills). Plaintiffs do not contend that Indiana's law concerns a subject on which there is a "compelling need for national uniformity in regulation."
 
 General Motors Corp. v. Tracy
 
 ,
 
 519 U.S. 278
 
 , 298 n.12,
 
 117 S.Ct. 811
 
 ,
 
 136 L.Ed.2d 761
 
 (1997).
 

 Finally, the claim under the Takings Clause is confined to the University itself. None of the three individual plaintiffs contends that he has any property interest in particular fetal tissue, so nothing has been taken from any of them. The statute does render valueless any fetal tissue, derived from abortions, owned by Indiana University. But as we observed
 earlier, the University, as part of Indiana, is not entitled to sue its own state. Indiana's legislature is free to decide what use (including none) to make of Indiana's property. See, e.g.,
 
 Great Lakes Higher Education Corp. v. Cavazos
 
 ,
 
 911 F.2d 10
 
 , 14-15 (7th Cir. 1990). Our decision in
 
 Illinois Clean Energy Community Foundation v. Filan,
 

 392 F.3d 934
 
 (7th Cir. 2004), does not hold otherwise. The Illinois Clean Energy Community Foundation is a charitable foundation funded by private donations. Confiscation of its property is a taking in a way that a state's decision about what to do with its own property never could be.
 

 Several lesser arguments have been considered but do not require discussion. We conclude that the district court should have entered judgment in defendants' favor. The injunction is reversed, and the case is remanded for that purpose.