In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-1562

INDIANA RIGHT TO LIFE VICTORY FUND and SARKES TARZIAN,
INCORPORATED,

*Plaintiffs-Appellants,*

*v.*

DIEGO MORALES, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-02796-SEB-TAB — **Sarah Evans Barker**, *Judge.*

_____

ARGUED DECEMBER 2, 2022 — DECIDED AUGUST 8, 2024

_____

Before EASTERBROOK, SCUDDER, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Before us is a First Amendment
challenge to Indiana campaign-finance restrictions that the
State's Supreme Court, after accepting our prior certification,
has held prohibit corporations from making contributions to
independent-expenditure political action committees—com-
monly known as super PACs. The Indiana Supreme Court's
decision all but resolves this appeal, as we agree with the

parties that the statutory provisions in question cannot be applied to super PACs consistent with the First Amendment. So we return the case to the district court with instructions to enter the preliminary injunction sought by the corporation and super PAC that brought this preenforcement challenge.

**I**

Our prior opinion and, more recently, that of the Indiana Supreme Court provide a full account of the pertinent facts and background. See *Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625 (7th Cir. 2023); *Indiana Right to Life Victory Fund v. Morales*, 217 N.E.3d 517 (Ind. 2023). A summary suffices here.

Sarkes Tarzian, Inc. is an Indiana-based television and radio company that would like to make a $10,000 donation to the Indiana Right to Life Victory Fund, a super PAC. Unlike ordinary political action committees, which accept contributions and then, in turn, give money directly to candidates, party committees, or ballot-initiative movements, super PACs spend the money themselves to advocate for or against a candidate, party, or initiative. For this reason, super PACs are called independent-expenditure PACs, and their expenditures often go towards television and online ads promoting the election or defeat of a particular candidate or cause.

Sarkes Tarzian and the Fund invoked 42 U.S.C § 1983 in a challenge to two provisions of Indiana law (Ind. Code §§ 3-9-2-4 & 3-9-2-5) that they read to prohibit corporate contributions earmarked for independent expenditures. The district court denied their request for a preliminary injunction. Although the court viewed the challenged provisions as likely unconstitutional under the reasoning in *Citizens United v.*

*FEC*, 558 U.S. 310 (2010), it found no credible threat that Indiana officials would enforce those provisions to limit a company like Sarkes Tarzian from contributing to a super PAC like the Fund. And without such a threat no injunction was warranted.

In the prior appeal we saw the statutory interpretation question as close and chose to certify it to the Indiana Supreme Court, the definitive authority on the meaning of Indiana law. The State's Supreme Court accepted the question and has since issued a decision concluding that "Indiana Code sections 3-9-2-3 to [3-9-2]-6 prohibit corporate contributions to PACs earmarked for independent campaign-related expenditures." *Indiana Right to Life Victory Fund*, 217 N.E.3d at 524.

## II

In the wake of the Indiana Supreme Court's decision, both parties filed statements of position on the next steps for resolving this appeal. See Cir. R. 52(b). The parties start from a common point of agreement: applying sections 4 and 5 of the Indiana Election Code to prohibit a corporate contribution to an independent-expenditure PAC would violate the First Amendment under the reasoning of *Citizens United* and our 2011 decision in *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139.

Sarkes Tarzian and the Fund urge us to announce that exact holding and, in turn, to direct the district court on remand to enter an order granting their request for a preliminary injunction. For their part, the named defendants—Indiana's Secretary of State, Attorney General, and members of the State's Election Commission—suggest a different approach. They invite us to refrain from reaching the merits and instead

to dismiss the action for lack of subject matter jurisdiction. They see the unconstitutionality of the challenged statutory provisions as so clear in light of the Indiana Supreme Court's decision as to eliminate any likelihood of state officials enforcing the challenged provisions to prohibit corporate contributions to a super PAC. With no actual threat of enforcement, the argument runs, Sarkes Tarzian and the Fund lack Article III standing to bring any preenforcement challenge to sections 4 and 5 of the Indiana Election Code. See *California v. Texas*, 593 U.S. 659, 670 (2021) (explaining that a plaintiff bringing a preenforcement challenge against a statute must "assert an injury that is the result of a statute's actual or threatened *enforcement* … in the future*").

The state officials have the analysis backward. They implore us to find subject matter jurisdiction missing because the answer to the underlying merits questions is beyond debate. But that approach collides with *Steel Company v. Citizens for a Better Environment*, where the Supreme Court held in no uncertain terms that merits questions, no matter how clear cut, cannot be resolved before questions of subject matter jurisdiction—before a federal court ensures itself of the presence of a Case or Controversy under Article III of the Constitution. See 523 U.S. 83, 94 (1998).

We have zero difficulty concluding that Sarkes Tarzian and the Fund have standing. The Indiana Election Code, we now know, prohibits independent expenditures like the earmarked $10,000 contribution that Sarkes Tarzian planned to make to the Fund. See Ind. Code § 3-9-2-5. The Fund has credibly alleged that the statute poses a threat of enforcement latent in the statute's existence and traceable to its enforcement. See *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003). That

chilling effect can be remediated, however, by a preliminary injunction against the named defendants blocking any enforcement. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (articulating the requirements for Article III standing).

All the defendant election officials offer in response is an invitation to trust their word that they do not intend to enforce unconstitutional statutes. True enough, a credible threat of injury may cease to exist "when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional." *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004). But the necessary promises fall well short here. Indeed, not every defendant—most especially the State's Attorney General—has filed an affidavit or taken any official action purporting to disavow any intent to enforce the challenged provisions against a company like Sarkes Tarzian and a super PAC like the Fund.

In *Trustees of Indiana University v. Curry*, 918 F.3d 537 (7thCir. 2019), we rejected these kinds of just-trust-us arguments. Prosecutors cannot bind their successors. See *id.* at 540. At the very least, the record before us here is missing representations about future intent from most defendants, a circumstance (among others) distinguishing this case from *Lawson v. Hill*, where we concluded that plaintiffs lacked standing because the county prosecutor's disavowal to enforce a statute altogether neutralized any threat of enforcement. See 368 F.3d 955, 959 (2004).

## III

Turning to the merits, recall that this appeal comes to us following the district court's denial of a motion for a preliminary injunction. The standards for receiving such relief are

clear. Sarkes Tarzian and the Fund must first carry the burden of demonstrating a likelihood of success on the merits and a likelihood of "irreparable harm in the absence of preliminary relief." See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). They must also ultimately convince us that the balance of equitable interests tips in favor of injunctive relief. See *id.* This latter inquiry requires us to consider both "the public interest" as well as the "competing harms" that would flow to the parties from a grant or denial of the requested injunction. *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

These principles entail added considerations in the context of protected speech. "The loss of First Amendment freedoms," we have emphasized, "is presumed to constitute an irreparable injury for which money damages are not adequate," meaning there is no adequate remedy at law. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). To reach equitable balancing, then, all Sarkes Tarzian and the Fund need show is a likelihood of success on the merits. In light of the Indiana Supreme Court's answer to our certified question, the defendant officials concede this prong, as they must. It is now resolved that Indiana law "prohibit[s] corporate contributions to PACs earmarked for independent campaign-related expenditures." *Indiana Right to Life Victory Fund*, 217 N.E.3d at 524. For such a limitation on political speech to survive First Amendment scrutiny, it must advance a sufficiently compelling government interest. The state official defendants have conceded that they have failed to make this showing.

Their concession is sound. First Amendment concerns become most serious when government officials attempt to curb political speech. See *Eu v. San Francisco Cnty. Democratic Cent.*

*Comm.*, 489 U.S. 214, 222–23 (1989); *Barland*, 664 F.3d at 152 ("In our system the individual free-speech right has structural significance; unencumbered discussion about political candidates and issues is integral to the operation of the system of government established by our Constitution." (internal quotation marks and citation omitted)). This principle explains why state action restricting political speech is highly disfavored, surviving only if the government identifies a sufficiently weighty justification for the imposed restriction. See *Barland*, 664 F.3d at 153 ("'Laws that burden political speech are subject to strict scrutiny'") (quoting *Citizens United*, 558 U.S. at 340).

To date the Supreme Court has recognized just one: preventing actual or apparent *quid pro quo* corruption in the form of direct contributions to political candidates. See *Buckley v. Valeo*, 424 U.S. 1, 26–29 (1976); *Citizens United*, 558 U.S. at 356–61; see also *Barland*, 664 F.3d at 153 ("[P]reventing actual or apparent *quid pro quo* corruption is the *only* interest the Supreme Court has recognized as sufficient to justify campaign-finance restrictions."). In *Citizens United*, however, the Court "made it clear that the government's interest in preventing actual or apparent corruption … cannot be used to justify restrictions on independent expenditures." *Barland*, 664 F.3d at 153; see also *Citizens United*, 664 F.3d 357 ("[W]e now conclude that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption."). That conclusion resolves this case. Indiana's prohibition on corporate contributions to super PACs therefore cannot be upheld on corruption-prevention grounds because that interest does not extend to such independent expenditures. And because the defendants have

offered no other justification, the Fund's success on the merits is all but a foregone conclusion.

Every other circuit to have considered this issue in the wake of *Citizens United* agrees. See, *e.g.*, *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537–38 (5th Cir. 2013) (recognizing that the government's interest in preventing corruption does not provide a legitimate basis to prohibit corporations' independent expenditures); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1118 (9th Cir. 2011) *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (same); *SpeechNow.org v. FEC*, 599 F.3d 686, 692–93 (D.C. Cir. 2010) (same).

In the final analysis, though, we may not issue a preliminary injunction unless doing so would be equitable, see *Korte*, 735 F.3d at 665—an inquiry that requires us to balance the "competing harms" that the parties would suffer from the grant or denial of injunctive relief, as well as "the public interest" at large. *Id.* Where, as here, free speech is at stake, the law places a heavy thumb on the scale favoring injunctive relief. Indeed, an injunction that "protect[s] First Amendment freedoms [is] always in the public interest." *Christian Legal Soc'y*, 453 F.3d at 859 (relying on *Elrod*, 427 U.S. at 373). Add to this the lack of any discernible harm that the defendant officials would suffer if the injunction is issued. The defendants, after all, have vowed not to enforce the unlawful campaign-finance restrictions against the Fund. All an injunction would do is bind the defendants to that promise. Compare the absence of any concrete harm to the defendants with the chill that the risk of enforcement might place on the political activities of the Fund and its donors were an injunction not issued.

In the end, all factors point in favor of issuing the injunction sought by the Fund.

For these reasons, we VACATE the decision of the district court and REMAND with instructions to enter a preliminary injunction barring enforcement of Indiana's campaign-finance restrictions against either the Fund or Sarkes Tarzian.