**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GREEN ROOM LLC; JB
DEVELOPMENT INC., d/b/a Polyxtracts;
CIND'S CBD AND VAPE LLC;
MOUNTAIN HIGH WELLNESS LLC;
UP N SMOKE II LLC, d/b/a Up N Smoke
II; GREYBULL RIVER FARMS LLC; DR
CHRONICS CONCENTRATES LLC,
d/b/a Dr Chronics Concentrates and Vapes;
CAPITOL ENTERPRISES LLC, d/b/a
Capitol Botanicals; FLOWER CASTLE
ELEVATED WELLNESS LLC; PLATTE
ENTERPRISES LLC, d/b/a Platte Hemp
Company LLC; MINDY FLINT,

    Plaintiffs - Appellants,

v.

STATE OF WYOMING; WYOMING
GOVERNOR, a/k/a Mark Gordon;
WYOMING ATTORNEY GENERAL,
a/k/a Bridget Hill; WYOMING
DEPARTMENT OF AGRICULTURE
DIRECTOR, a/k/a Doug Miyamoto,

    Defendants - Appellees,

and

ALBANY COUNTY DISTRICT
ATTORNEY, in his official capacity, a/k/a
Edward Kurt Britzius; BIG HORN
COUNTY DISTRICT ATTORNEY, in her
official capacity, a/k/a Marcia Bean;
CAMPBELL COUNTY DISTRICT
ATTORNEY, in his official capacity, a/k/a

Nos. 24-8053 & 24-8054

Nathan Henkes; CARBON COUNTY DISTRICT ATTORNEY, in her official capacity, a/k/a Sarah Harkins; CONVERSE COUNTY DISTRICT ATTORNEY, In his individual capacity, a/k/a Quentin Richardson; CROOK COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Joseph M Baron; FREMONT COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Patrick LeBrun; GOSHEN COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Eric Boyer; HOT SPRINGS COUNTY DISTRICT ATTORNEY, in her official capacity, a/k/a Jill Logan; JOHNSON COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Tucker Ruby; LINCOLN COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Spencer Allred; NIOBRARA COUNTY DISTRICT ATTORNEY, in her official capacity, a/k/a Anne Wasserburger; PARK COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Brian Skoric; PLATTE COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Douglas W Weaver; SHERIDAN COUNTY DISTRICT ATTORNEY, in her official capacity, a/k/a Dianna Bennett; SUBLETTE COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Clayton Melinkovich; SWEETWATER COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Daniel Erramouspe; TETON COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Erin Weisman; UINTA COUNTY DISTRICT ATTORNEY, in her official capacity, a/k/a Loretta Rae Howieson; WASHAKIE COUNTY DISTRICT ATTORNEY, in his official capacity, a/k/a Anthony Barton; WESTON COUNTY DISTRICT ATTORNEY, in his

2

official capacity, a/k/a Michael Stulken;
LARAMIE COUNTY DISTRICT
ATTORNEY, in her official capacity, a/k/a
Sylvia Miller Hackl; NATRONA
COUNTY DISTRICT ATTORNEY, in his
official capacity, a/k/a Dan Itzen,

Defendants.

———————————————

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:24-CV-00128-KHR)**

———————————————

Donna D. Domonkos (Brittany Thorpe with her on the briefs) of Domonkos & Thorpe, LLC, Cheyenne, Wyoming, for Plaintiffs-Appellants.

Jonathan D. Sater (Jenny L. Craig and Kellsie J. Singleton, with him on the brief) of the Wyoming Attorney General's Office, Cheyenne, Wyoming, for Defendants-Appellees.

———————————————

Before **HARTZ**, **McHUGH**, and **MORITZ**, Circuit Judges.

———————————————

**HARTZ**, Circuit Judge.

———————————————

Plaintiffs are businesses that cultivate, distribute, and sell hemp products in and outside of Wyoming. They seek injunctive and declaratory relief from a Wyoming statute, Senate Enrolled Act 24 (SEA 24), that regulates the production, processing, and sale of hemp products. *See* Wyo. Stat. Ann. §§ 11-51-101–104. The United States District Court for the District of Wyoming dismissed their complaint for failure to state a claim upon which relief can be granted. Plaintiffs challenge this ruling on appeal, arguing that SEA 24 is preempted by a federal statute, violates the Dormant Commerce Clause doctrine, constitutes an unconstitutional regulatory

3

taking, and is void for vagueness. They also challenge the district court's denial of their motion for a temporary restraining order or preliminary injunction.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal. We conclude that Plaintiffs (1) lack a substantial federal right to support their preemption claim, (2) have failed to demonstrate a Dormant Commerce Clause violation, (3) have not established a regulatory taking of their commercial personal property, and (4) have not shown that SEA 24 is unconstitutionally vague. In addition, we lack jurisdiction over Plaintiffs' appeal of the denial of their motion for preliminary relief because the district court dismissed Plaintiffs' complaint.

## I.    BACKGROUND

Hemp and marijuana come from different varieties of the same species of plant, *Cannabis sativa*. "While marijuana generally refers to the cultivated plant used as a psychotropic drug . . . , hemp is cultivated for use in the production of a wide range of products." Congressional Research Service, Defining *Hemp*: A Fact Sheet (2019) at 1, https://www.congress.gov/crs-product/R44742; [https://perma.cc/79BV-XHBD]. Compared to marijuana, hemp contains only small amounts of tetrahydrocannabinol (THC)—the chemical compound in cannabis responsible for producing psychoactive effects in humans. *See* Encyclopedia Britannica, *hemp* (2025), https://www.britannica.com/plant/hemp; [https://perma.cc/GG2K-33JG].

A.    Regulatory Legislation

1.    *The 2018 Farm Bill*

For years the Controlled Substances Act (CSA) did not distinguish hemp from marijuana, so it was a prohibited controlled substance under federal law. *See* 21 U.S.C. § 802(16) (2017). That changed with the Agricultural Improvement Act of 2018 (7 U.S.C. §§ 1639*o*–1639s) (2018 Farm Bill), which excluded hemp from the definition of marijuana on Schedule I of the CSA. *See* 21 U.S.C. § 802(16)(B)(i) ("The terms 'marihuana' and 'marijuana' do not include . . . hemp, as defined in section 1639*o* of Title 7."). The statute defined *hemp* as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1).

The 2018 Farm Bill "authorizes states to legalize hemp and regulate its production within their borders but generally preclude[s] states from interfering with the interstate transportation of hemp." *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1168 (10th Cir. 2023). In particular, it allows states to take "primary regulatory authority over the production of hemp" after its regulatory plan receives approval from the United States Department of Agriculture. 7 U.S.C. § 1639p(a)(1); *see id.* § 1639p(b).

Of particular relevance to this appeal are two provisions that address the relationship between the federal and state governments in hemp regulation. First, the

5

statute's antipreemption provision states that "[n]othing in this subsection [(relating to state hemp plans)] preempts or limits any law of a State . . . that—(i) regulates the production of hemp; and (ii) is *more stringent* than this subchapter." *Id.* § 1639p(a)(3)(A) (emphasis added). Second, the transportation-through provision provides that (a) "[n]othing in [the Act] prohibits the interstate commerce of hemp (as defined in [the Act]) or hemp products," and (b) "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with [the Act] *through the State*." 7 U.S.C. § 1639*o* note (emphasis added).

### 2.    *SEA 24*

Following up on the 2018 Farm Bill, Wyoming in 2019 enacted legislation that legalized and regulated the production and sale of hemp. Wyoming's definition of *hemp* was essentially the same as that of Congress. *See* Wyo. Stat. Ann. § 11-51-101(a)(iii) (2019) (defining *hemp* as cannabis with a "THC concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis when using post-decarboxylation or another similarly reliable testing method"); § 11-51-101(vii) (defining *THC* as "tetrahydrocannabinol, the psychoactive component of the cannabis plant, with the scientific name trans-delta 9-tetrahydrocannabinol").

In 2024, however, the Wyoming legislature changed direction, enacting three major changes to Wyoming's hemp regulatory regime through SEA 24. First, it narrowed the definition of hemp in the regulatory statute to exclude synthetic substances. *See id.* § 11-51-101(a)(iii) (2024) ("'Hemp' or 'hemp product' means all parts, seeds and varieties of the plant cannabis sativa l., whether growing or not, or a

6

product, derivative, extract, cannabinoid, isomer, acid, salt or salt of isomer made from that plant with *no synthetic substance* and with a THC concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis when using post-decarboxylation or another similarly reliable testing method" (emphasis added)).

Second, SEA 24 further narrowed the definition of hemp by *expanding* the definition of THC. While the prior definition of THC was limited to just delta-9 THC, *see id.* § 11-51-101(a)(vii) (2019), the new definition of THC also includes, among other things, delta-8 THC,[1] *see id.* § 11-51-101(a)(vii)(A), (C) (2024) (defining *THC* as "[*a*]*ny* psychoactive structural, optical or geometric isomers of tetrahydrocannabinol" (emphasis added)). Consequently, the delta-8 and delta-9 THC concentration of a product *combined* must constitute no more than 0.3% of the weight for that product to be considered legally authorized hemp. *See id.* § 11-51-103(f) (2024) ("No person or licensee shall: (i) [p]roduce, process or sell hemp or hemp products containing more than three-tenths of one percent (0.3%) THC on a dry

---

[1] "[D]elta-8 THC [] is a psychoactive substance found in the *Cannabis sativa* plant, of which marijuana and hemp are two varieties. Delta-8 THC is one of over 100 cannabinoids produced naturally by the cannabis plant but is not found in significant amounts in the cannabis plant. As a result, concentrated amounts of delta-8 THC are typically manufactured from hemp-derived cannabidiol (CBD)." United States Food and Drug Administration (FDA), *5 Things to Know about Delta-8 Tetrahydrocannabinol – Delta-8 THC* (2022), https://www.fda.gov/consumers/consumer-updates/5-things-know-about-delta-8-tetrahydrocannabinol-delta-8-thc?uid=cec8c427cae15s16 [https://perma.cc/U6SS-EQMY]. This compound "has psychoactive and intoxicating effects, similar to delta-9 THC (i.e., the component responsible for the 'high' people may experience from using cannabis)," and, according to the FDA, "[d]elta-8 THC has serious health risks." *Id.* (capitalization omitted). Apparently, products containing delta-8 have been a substantial part of the business of at least some of the Plaintiffs.

weight basis when using post-decarboxylation or another similarly reliable testing method.").

Third, the legislature added both naturally occurring and synthetic delta-8 THC to Schedule I of the Wyoming Controlled Substances Act, *see id.* § 35-7-1014(d)(xxi), and limited the hemp exemption in that Act to conform to the new definition of hemp in the regulatory statute*, see id.* § 35-7-1063(a)(i), (b)(i). Thus, it became unlawful in Wyoming to "manufacture, deliver, or possess with intent to manufacture or deliver" hemp or hemp products containing more than 0.3% THC (including delta-8 and delta-9) or synthetic substances—even though these products may be legal under federal law. *Id.* § 35-7-1031(a)(ii).

The dispute before us arises from the newly created differences between the federal government's regulation of hemp under the 2018 Farm Bill and that of Wyoming under SEA 24.

### B.     Procedural History

Before passage of SEA 24, Plaintiffs "had benefitted for several years from operating within a legal [hemp] market . . . throughout Wyoming and the rest of the country." Aplt. App., Vol. I at 15. On June 28, 2024, they brought a preenforcement action under 28 U.S.C. § 2201 and 42 U.S.C. § 1983 seeking declaratory and injunctive relief from SEA 24. They claimed that SEA 24 is unconstitutional because it (1) is preempted by the 2018 Farm Bill under the Supremacy Clause, U.S. Const. art. VI cl. 2; (2) violates the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, under the Dormant Commerce Clause doctrine; and (3) is void for vagueness under the Due

8

Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, U.S. Const. amend. V; U.S. Const. amend. XIV, § 1.

Plaintiffs contemporaneously filed a motion for a temporary restraining order or preliminary injunction to prevent SEA 24 from going into effect. In addition to the claims brought in their complaint, Plaintiffs' brief in support of their motion argued that SEA 24 constituted an unconstitutional regulatory taking of their personal property. The Defendants—the State of Wyoming and various Wyoming government officials sued in their official capacities—opposed Plaintiffs' motion for preliminary relief and filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

The district court denied Plaintiffs' motion for preliminary relief because Plaintiffs failed to establish a substantial likelihood of success on the merits, irreparable injury, and the public interest in granting relief. Shortly thereafter the court granted Defendants' motion to dismiss. First, it dismissed Plaintiffs' claims against all Defendants except Wyoming Attorney General Bridget Hill and Wyoming Department of Agriculture Director Doug Miyamoto for lack of subject-matter jurisdiction because of Eleventh Amendment immunity.[2] On appeal Plaintiffs do not

_____

[2] Plaintiffs moved to dismiss all Defendants except Hill, Miyamoto, Gordon, and the State. This motion was granted by the district court. On motion by Defendants the district court later held that sovereign immunity protected both the State of Wyoming, *see Good v. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024) ("The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." (emphasis and internal quotation marks omitted)), and Wyoming Governor Mark Gordon (because Plaintiffs failed to show that he was responsible for *enforcing* SEA 24), *see K.A. v.*

dispute this portion of the ruling. Second, incorporating its analysis from its order denying the motion for preliminary relief, the district court granted the motion to dismiss all claims against the two remaining Defendants for failure to state a claim upon which relief can be granted.

## II.     DISCUSSION

### A.     Motion to Dismiss

We review de novo the district court's dismissal of Plaintiffs' claims under Rule 12(b)(6). *See Serna*, 58 F.4th at 1169. "[D]ismissal is appropriate if the complaint alone is legally insufficient to state a claim." *Id*. at 1169 (internal quotation marks omitted). We agree with the district court that Plaintiffs have failed to state a claim upon which relief can be granted.

#### 1.     *Preemption*

Plaintiffs first argue that SEA 24 is preempted by the 2018 Farm Bill because it "imposes an impermissibly narrower definition of hemp" that "conflicts with the federal standard." Aplt. Br. at 9. They say that "[w]hile the States have the authority to regulate the production of hemp, [they] do[] not have the authority to change the definition of hemp." *Id.* at 11. But Plaintiffs have failed to state a cognizable

---

*Barnes*, 134 F.4th 1067, 1077 (10th Cir. 2025) ("*Ex parte Young* permits constitutional challenges to the enforcement of a state law through suits for prospective injunctive and declaratory relief against state officers in their official capacities. But only if the sued official has a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." (internal quotation marks omitted)).

10

preemption claim under 42 U.S.C. § 1983, because they cannot identify any substantive federal right to support such a claim.

"Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law." *Tafoya v. Adams*, 816 F.2d 555, 558 n.5 (10th Cir. 1987). To "support a cause of action brought under § 1983," Plaintiffs must identify an "unambiguously conferred" federal right. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); *see id.* at 282 ("[A] plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." (internal quotation marks omitted)). "[I]t is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]." *Id.* at 283.

There are two categories of rights which may support a cause of action under § 1983. First, the Constitution confers certain rights. *See, e.g.*, *Dennis v. Higgins,* 498 U.S. 439, 450–51 (1991) (claims regarding violations of the Commerce Clause may be brought under § 1983). Second, "a statutory violation may be enforced through § 1983," but only if "Congress intended to create a federal right." *Gonzaga Univ.*, 536 U.S. at 283 (internal quotation marks and emphasis omitted).

"For a statute to create such private rights, its text must be phrased in terms of the persons benefited." *Id.* at 284 (internal quotation marks omitted); *see id.* at 287 ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." (apostrophe and internal quotation marks omitted)). If a "statute by its terms grants

11

no private rights to any identifiable class," then Congress "definitively" did not intend to create a private right. *Id.* at 283–84 (internal quotation marks omitted).

Plaintiffs argue that their preemption claim is derived from two substantive rights: one constitutional right and one statutory right. We are not persuaded.

Plaintiffs first claim a right under the Supremacy Clause of the Constitution; *see* U.S. Const. art. VI cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."). But the Supreme Court has expressly rejected such a claim: "[T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (citation and internal quotation marks omitted).

Plaintiffs next look to the 2018 Farm Bill for a substantive right.[3] But no language in the statute speaks in terms of individual rights. "It does not say, for example, that licensed hemp [producers] may" produce hemp as federally defined or that "no person shall prevent licensed hemp [producers] from" producing hemp as federally defined. *Serna*, 58 F.4th at 1171 (internal quotation marks omitted). If anything, hemp producers are the "person[s] regulated," not the "individuals protected," by the statute. *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 903 (10th Cir. 2017) (internal quotation marks omitted). As the district court explained, "the mere

---

[3] Plaintiffs also reference 42 U.S.C. § 1982 and the Fourteenth Amendment. But to the extent that they are relying on those laws as creating personal rights, they fail to develop an argument that goes beyond their claims under the Supremacy Clause and the 2018 Farm Bill.

fact federal law defines hemp, does not mean it confers a right to hemp under that definition." *Green Room LLC v. Wyoming*, No. 24-CV-128-KHR, 2024 WL 3817820, at *5 (D. Wyo. July 19, 2024). And to the extent that Plaintiffs claim a substantive right in the statute's transportation-through provision, 7 U.S.C. § 1639o note (barring any state prohibition on transportation of hemp products through the State)—which they reference in their complaint but do not mention in the relevant section of their brief on appeal—we note that any such claim is squarely foreclosed by our opinion in *Serna*. *See* 58 F.4th at 1171 (concluding that the text of § 1639o note "does not display a congressional intent to grant private rights to licensed hemp farmers").

Plaintiffs point us to no other language in the 2018 Farm Bill that allegedly grants them any substantive rights.[4] We therefore affirm the district court's dismissal of Plaintiffs' preemption claim.

---

[4] We need not separately decide whether Plaintiffs' complaint states a free-standing equitable-relief claim—a claim that may be consistent with their complaint—because they have not pursued such a claim in district court or on appeal. Under this circuit's precedent any such claim would be subject to the same substantive-right requirement as their § 1983 claim. *See Safe Sts. All.*, 859 F.3d at 903 (refusing to recognize a freestanding equitable claim of preemption because a plaintiff can bring a preemption action *only* if he or she "has substantive rights" in the statute "that he or she is seeking to vindicate").

Although we are bound by *Safe Streets Alliance*, we write to express our discomfort with this precedent. In our view, in which we are far from alone, the Supreme Court in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), established that a plaintiff can seek injunctive or declaratory relief under the traditional equity powers of the federal courts even if federal law bestows upon the plaintiff no substantive private right. The Court declared that "as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* at 326. *Armstrong* explained: "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of

equity, and reflects a long history of judicial review of illegal executive action, tracing back to England. It is a judge-made remedy, and we have never held or even suggested that, in its application to state officers, it rests upon an implied right of action contained in the Supremacy Clause." *Id.* at 327 (citation omitted). In short, this power does not depend upon the existence of some federal statutory or constitutional right. Indeed, although the *Armstrong* decision was fractured, "*every* Member of the Court apparently assumed that a federal court 'sitting in equity' possessed a freestanding authority to enjoin enforcement of the state conduct on preemption grounds." Henry Paul Monaghan, *A Cause of Action, Anyone?: Federal Equity and the Preemption of State Law*, 91 Notre Dame L. Rev. 1807, 1822 (May 2016); *see* William Baude, et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1209 (8th ed. 2025) (stating that *Armstrong* "affirms presumptive enforcement of federal rights through injunctive relief in federal court," while recognizing that this judge-made equitable remedy may be displaced by Congress); Gerald S. Dickinson, *Landowners' FCC Dilemma: Rereading the Supreme Court's Armstrong Opinion After the Third Circuit's* DePolo *Ruling*, 11 N.Y.U. J.L. & Liberty 218, 221–22 (2017) (stating that the *Armstrong* Court noted "that suits could proceed in federal courts in equity, if the statute did not explicitly or implicitly prohibit private enforcement" because the "judge-made" equitable remedy "does not rely upon an implied right of action under the Supremacy Clause" (internal quotation marks omitted)); Alexandra Nickerson, *Ultra-APA Ultra Vires Review: Implied Equitable Actions for Statutory Violations by Federal Officials*, 121 Colum. L. Rev. 2521, 2539, 2550 (December 2021) ("In *Armstrong v. Exceptional Child Center, Inc.*, the Court recognized that implied equitable rights of action exist but explained that they can be precluded by implied or express statutory provisions."); 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.6 at 271 (3d ed. Supp. 2025) ("Rather than infer a cause of action directly from a constitutional provision, courts may resort to finding a cause of action in equity for injunctive relief, stemming from a long history of judicial review of illegal executive action, tracing back to England." (internal quotation marks omitted)).

Our sibling circuits appear to read *Armstrong* in the same way, recognizing an equitable cause of action for an injunction against preempted state law without needing to address whether the plaintiff was invoking a federal right. As stated by the Fifth Circuit, "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity. . . . [A] plaintiff ha[s] a cause of action against defendants at equity, regardless of whether it can invoke § 1983. Even though [the federal statute at issue] does not confer a private right, a plaintiff is not prevented from gaining equitable relief on preemption grounds." *Crown Castle Fiber, L.L.C. v. City of Pasadena, Tex.*, 76 F.4th 425, 434–35 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 820 (2024) (brackets, citations, and internal quotation marks omitted)**;** *see Algonquin Gas Transmission, LLC v. Weymouth, Mass.*, 919 F.3d 54, 61 (1st Cir.

2019) (citing *Armstrong* for the proposition that a plaintiff can seek equitable relief on a preemption claim through a "negative injunction, premised on its claim that federal law 'immunizes' it from local regulation"); *UnitedHealthcare of N.Y., Inc. v. Lacewell,* 967 F.3d 82, 90 (2d Cir. 2020) (citing *Armstrong* for the proposition that a plaintiff may "invoke[] equity preemptively to assert a defense that would be available to it in a state or local enforcement action," and holding that plaintiffs' claim that a state regulation was preempted by the Affordable Care Act fell "squarely within this equity jurisdiction" (internal quotation marks omitted)); *Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*, 108 F.4th 144, 149 (3d Cir.), *amended on denial of reh'g*, 110 F.4th 612 (3d Cir. 2024) (considering plaintiff's preemption claim on the merits without discussion of substantive federal rights because "'federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law'" (quoting *Armstrong*, 575 U.S. at 326–27)); *King v. Youngkin*, 122 F.4th 539, 544 n.1, 546 (4th Cir. 2024) (indicating that *Armstrong* affirmed the availability of a freestanding equitable remedy based on federal preemption so long as that remedy has not been impliedly foreclosed by Congress in a statute); *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023) (recognizing that despite the unavailability of relief under § 1983, "[i]n equity, it is true, claimants sometimes may 'sue to enjoin unconstitutional actions by state and federal officers' even in the absence of a statutory cause of action." (quoting *Armstrong*, 575 U.S. at 327)); *Int'l Union of Operating Engineers Loc. 399 v. Vill. of Lincolnshire*, 905 F.3d 995, 999 (7th Cir. 2018) (without any mention of a personal right, stating that "a plaintiff may 'sue to enjoin unconstitutional actions by state and federal officers' in violation of supreme federal law by invoking courts' equitable powers or through the comparable mechanisms provided by the Declaratory Judgment Act," quoting *Armstrong*, 575 U.S. at 327), judgment vacated as moot by 587 U.S. 1049 (2019); *Arkansas United v. Thurston*, 146 F.4th 673, 678–79 (8th Cir. 2025) (recognizing that *Armstrong*, 575 U.S. at 326–28, "alluded to the possibility that preemption principles may be a source for equitable relief when no other remedy is available"); *Moore v. Urquhart,* 899 F.3d 1094, 1103 (9th Cir. 2018) ("[P]laintiffs do not need a statutory cause of action [for certain injunctive or declaratory relief]. They can rely on the judge-made cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), which permits courts of equity to enjoin enforcement of state statutes that violate the Constitution or conflict with other federal laws." (citing *Armstrong*, 575 U.S. at 326–27)); *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025) (unpublished) (declining to stay preliminary injunction; citing *Armstrong* and indicating that equitable actions to restrain state laws preempted by federal law are proper unless foreclosed by Congress); *D.C. Ass'n of Chartered Pub. Sch. v. D.C.*, 930 F.3d 487, 493 (D.C. Cir.

2019) (assuming that a "putative cause of action for [a] preemption-based claim would arise under federal common law" because under *Armstrong* this cause of action "does not arise under the Constitution itself," but rather "exists as 'the creation of courts of equity,'" but the suit at issue was barred by specific statutory provision (quoting *Armstrong*, 575 U.S. at 327)).

In any event, we doubt that our recognizing a claim in equity would end up helping Plaintiffs. We find persuasive the reasoning by the Seventh Circuit in *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546–48 (7th Cir. 2020)**,** that the only provision of the Farm Bill that could preempt a statute quite similar to the Wyoming statute is the transportation-through clause, 7 U.S.C. § 1639*o* note ("No State . . . shall prohibit the transportation or shipment of hemp or hemp products . . . *through the State*." (emphasis added)). But it would be premature in this litigation to enjoin, or even declare unlawful, any portion of the Wyoming statute predicated on such preemption because the threat to Plaintiffs has not been shown. For one thing, the Wyoming courts might well interpret the Wyoming statute as not applying to transportation through the State that is unconnected with any other component of the production process for hemp within Wyoming. *See Arizona v. United States*, 567 U.S. 387, 415 (2012) ("The Federal Government has brought suit against a sovereign State to challenge the provision [of a state statute] even before the law has gone into effect. There is a basic uncertainty about what the law means and how it will be enforced. At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume [the state statute] will be construed in a way that creates a conflict with federal law. . . . So far as statutes fairly may be construed in such a way as to avoid doubtful constitutional questions they should be so construed; and it is to be presumed that state laws will be construed in that way by the state courts." (citation and internal quotation marks omitted)). In addition, it is uncertain whether Plaintiffs have alleged that they are engaged in transporting hemp from one foreign state to another through Wyoming. On this record, we think that neither injunctive nor declaratory relief would be warranted. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaring that courts should exercise jurisdiction in a declaratory-judgment action only if the facts alleged establish "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" (internal quotation marks omitted)).

16

### 2. *Dormant Commerce Clause*

Plaintiffs next challenge the district court's dismissal of their Commerce Clause claim. We affirm the district court because Plaintiffs have failed to adequately allege such a claim.

"The Commerce Clause not only expressly empowers Congress to regulate commerce among the states, but it also impliedly confines the states' power to burden interstate commerce." *Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Rogers*, 27 F.3d 1499, 1511 (10th Cir. 1994). The Dormant Commerce Clause doctrine expresses this negative implication "by denying the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Id.* at 1511 (internal quotation marks omitted). "[T]his antidiscrimination principle lies at the very core of our dormant Commerce Clause jurisprudence," which "prohibits the enforcement of state laws driven by economic protectionism— that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (ellipsis and internal quotation marks omitted).

We have recognized two distinct types of challenges under the Dormant Commerce Clause. First, a plaintiff may argue that "the challenged law affirmatively or clearly discriminates against interstate commerce on its face or in practical effect." *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1040 (10th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the challenged law does not discriminate," a plaintiff may still prevail under *Pike* balancing if it can show that "the burden imposed on

17

interstate commerce is *clearly excessive* in relation to the putative local benefits." *Id.* at 1040 (emphasis added; brackets omitted) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). "[T]he extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike*, 397 U.S. at 142. "[A] State's power to regulate commerce is never greater than in matters traditionally of local concern. For example, regulations that touch upon *safety* . . . are those that the Court has been most reluctant to invalidate." *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981) (Powell, J., plurality opinion for four Justices) (emphasis added; citation and internal quotation marks omitted); *see id.* at 686–87 (Brennan, J., joined by Marshall, J., concurring) (recognizing that "if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." (emphasis and internal quotation marks omitted)).

Plaintiffs do not contend—nor could they—that SEA 24 discriminates against interstate commerce on its face, since SEA 24 does not distinguish between hemp produced in-state and hemp produced out-of-state. They therefore have no choice but to rely on *Pike*.[5] They allege in their complaint that SEA 24 places "a substantial

---

[5] Although Justice Gorsuch's opinion in *Nat'l Pork Producers Council*, 598 U.S. at 380–83, questioned the propriety, even the coherence, of balancing incommensurable quantities such as health and economic costs, six justices voted to retain the *Pike* balancing test. *See id.* at 392 (Sotomayor, J., joined by Kagan, J., concurring in part) (Although "*Pike* claims that do not allege discrimination or a burden on an artery of commerce are further from *Pike*'s core . . . , the Court today

burden on interstate commerce," Aplt. App., Vol. I at 32, and contend in their opening brief on appeal that the state law imposes a substantial burden on interstate transportation because "if while in Wyoming a person cannot possess certain hemp and hemp products declared illegal under federal law, then one cannot transport or ship it, either." Aplt. Br. at 26; *see* Wyo. Stat. Ann. § 35-7-1031(a) ("[I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver," a Schedule I controlled substance.).

That is not enough to prevail under the Dormant Commerce Clause doctrine. There are two defects in Plaintiffs' presentation. First, Plaintiffs "bear[] the burden of establishing a *Pike* violation." *Kleinsmith*, 571 F.3d at 1043. Yet they do not even attempt to show that the balance of interests weighs in their favor in this case—that is, that "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. This failure to develop the necessary argument precludes reversal on this ground. *See Tachias v. Sanders*, 130 F.4th 836, 843–44 (10th Cir. 2025).

Second, as we have already stated in the final paragraph of footnote 4, Plaintiffs have not unambiguously alleged that they in fact transport hemp products from one foreign state to another through Wyoming. And, more importantly, we

---

does not shut the door on all such *Pike* claims."); *id.* at 396–97 (Roberts, C.J., joined by Alito, J., Kavanaugh, J., and Jackson, J., concurring in part and dissenting in part) (noting that a majority of the Court agrees that "*Pike* extends beyond laws either concerning discrimination or governing interstate transportation," and that "it is possible to balance benefits and burdens under the approach set forth in *Pike*.").

should not interpret the Wyoming statute to prohibit such transportation before the state courts have had an opportunity to interpret state law to avoid such a potential conflict with federal law. *See Arizona*, 567 U.S. at 415.

We affirm the district court's dismissal of Plaintiffs' Dormant Commerce Clause claim. *See N. Va. Hemp & Agric., LLC,* 125 F.4th at 496–97 (4th Cir. 2025) (rejecting Dormant Commerce Clause challenge to Virginia law prohibiting the sale of certain hemp products).

### 3.    *Regulatory Taking*

Plaintiffs argue that "SEA 24 is an unconstitutional regulatory taking" of their property without just compensation.[6] Aplt. Br. at 27. They assert that they reasonably "rel[ied] on the federal definition of hemp" and "similar language" in the 2019 Wyoming hemp law in developing their businesses. *Id.* at 28. SEA 24's new restrictions on the production and sale of certain hemp products, they say, impermissibly "interfere[] with their investment-backed expectations." *Id.* They

---

[6] Appellants did not assert a regulatory-takings claim in their complaint. Instead, they raised the issue for the first time in their brief in support of their motion for a temporary restraining order or preliminary injunction. But because the district court considered the regulatory-takings claim on the merits in granting Wyoming's motion to dismiss, we will assume without deciding that the issue is preserved for review. *Cf. Martinez v. Potter*, 347 F.3d 1208, 1211–12 (10th Cir. 2003) ("[O]ur cases interpret the inclusion of new allegations in a response to a motion for summary judgment, as a potential request to amend the complaint[,]. . . . [and] we have recognized that permitting argument and addressing an issue in a summary judgment order may be indicative of the district court's decision to permit amendment. . . .").

20

assert that "moving the goal posts in the middle of the game" by "[c]hanging the definition of hemp" constitutes a "regulatory taking." *Id.* at 31. We cannot agree.

The Fifth Amendment's Takings Clause provides that "private property" shall not "be taken for public use, without just compensation."  U.S. Const. amend. V; *see Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536 (2005) (recognizing that the Takings Clause was made applicable to the States through the Fourteenth Amendment). Although "[t]he paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property," the Supreme Court has also recognized that "government *regulation* of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537 (emphasis added). A regulatory action is deemed to be a taking per se if it (1) "requires an owner to suffer a permanent physical invasion of her property" or (2) "completely deprive[s] an owner of *all* economically beneficial use of her property." *Id.* at 538 (original brackets and internal quotation marks omitted). "Outside these two relatively narrow categories, . . . regulatory takings challenges are [generally] governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)." *Id.* The relevant factors include (1) "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations," and (2) "the character of the

21

governmental action." *Penn Cent. Transp. Co.*, 438 U.S. at 124 (citation and internal quotation marks omitted).

But the above cases concerned interests in real property. Plaintiffs do not cite, and we are not aware of any, Supreme Court cases in which this framework has been applied to regulation of *personal property*, such as the goods of Plaintiffs at issue here. In particular, Plaintiffs have not pointed to a case in which a law restricting commercial uses of personal property was held to be an unconstitutional regulatory taking. Indeed, as the Supreme Court has explained:

> [O]ur 'takings' jurisprudence, . . . has traditionally been guided by the understandings of our citizens *regarding* the content of, and the State's power over, the 'bundle of rights' that they acquire when they obtain title to property. It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers . . . . And *in the case of personal property*, by reason of the State's traditionally high degree of control over commercial dealings, [the property owner] ought to be aware of the possibility that new regulation *might even render his property economically worthless* (at least if the property's only economically productive use is sale or manufacture for sale).

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992) (emphasis added).

Thus, any investment-backed business expectations of Plaintiffs must be tempered by recognition of the reality of the government's police powers. The Supreme Court has therefore repeatedly rejected takings claims in a context indistinguishable for this purpose from the regulation of hemp—namely, the regulation of alcohol. *See, e.g.*, *James Everard's Breweries v. Day,* 265 U.S. 545 (1924) (finding it "clear" that federal statute prohibiting physicians from prescribing

22

intoxicating malt liquors did not take petitioners' "property in violation of the Fifth Amendment," *id.* at 563, even though petitioner "had on hand a large quantity of these intoxicating malt liquors which it could not thereafter sell in the conduct of its business, and of which it could only dispose, after de-alcoholization, at a heavy loss," *id.* at 556); *Jacob Ruppert, Inc. v. Caffey*, 251 U.S. 264, 303(1920) (applying federal statute prohibiting the manufacture and sale of certain nonintoxicating liquor to liquor acquired before passage of statute was "no appropriation of private property, but merely a lessening of value due to a permissible restriction imposed upon its use"); *Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887) (holding that Kansas statute prohibiting the manufacture of liquor without a license was not a taking since "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit").

No later decisions of the Supreme Court have placed in question this long-standing law, and it continues to be applied by the lower courts. In the case of a "heavily regulated and highly contentious activity such as video poker" (or the production and sale of cannabis products), "[t]he pendulum of politics swings periodically between restriction and permission in such matters, and prudent investors understand the risk." *Holliday Amusement Co. of Charleston v. South Carolina*, 493 F.3d 404, 411 (4th Cir. 2007) (South Carolina statute outlawing the possession of video gaming machines was not a taking even though it allegedly

destroyed plaintiffs' business and interfered with their business expectations based on South Carolina's prior regulatory regime). Plaintiffs should have been well aware that the Wyoming legislature might not continue to look as favorably upon hemp and hemp products. The State need not provide just compensation every time it adjusts its regulatory scheme, even if those changes incidentally impair or even destroy the businesses of some.

We affirm the district court's dismissal of Plaintiffs' regulatory-takings claim.

### 4.    *Vagueness*

Finally, Plaintiffs contend that SEA 24 is "unconstitutionally vague and overbroad."[7] Aplt. Br. at 31 (bold omitted). They assert that the statute's definition of *synthetic substance* is unclear and could be interpreted to include many substances, including Cannabidiol (CBD).[8] They speculate that, so interpreted, SEA 24 would result in "the demise of the hemp industry in Wyoming." *Id.* at 33.[9] But we fail to see how the statute as written could be void for vagueness.

---

[7] To the extent that Plaintiffs assert an overbreadth claim against SEA 24, we need not address it. Such challenges are generally limited to the First Amendment context, and Plaintiffs do not argue that SEA 24's restrictions on the production and sale of hemp products somehow violate their First Amendment rights. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment.").

[8] According to the Centers for Disease Control and Prevention (CDC), "Cannabidiol (CBD) is a compound found in cannabis" that "is not impairing, meaning it does not cause a 'high.'" CDC, About CBD (2025), https://www.cdc.gov/cannabis/about/about-cbd.html [https://perma.cc/4T9V-BT56].

[9] Plaintiffs also claim that the statute is subject to arbitrary enforcement because laboratories cannot distinguish between naturally occurring and synthetically

"The void-for-vagueness doctrine requires that statutory commands provide fair notice to the public." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023). "[A] court may find a statute unconstitutionally vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* (internal quotation marks omitted). The Constitution, however, "does not impose impossible standards of specificity, and courts should remain ever mindful that general statements of the law are not inherently incapable of giving fair and clear warning. After all, in most English words and phrases there lurk uncertainties, so it is always easy to argue that words are incapable of expressing fixed and determinate concepts." *Id*. at 1233–34 (cleaned up).[10]

---

created delta-8 THC, so companies would be penalized based on guesswork. But this argument is waived because it was not presented to the district court, and Plaintiffs failed to argue plain error in their opening brief. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127–31 (10th Cir. 2011).

[10] In contesting a purportedly vague statute, a plaintiff may bring either a facial challenge (claiming that "no set of circumstances exists under which the [statute] would be valid") or an as-applied challenge (claiming that the statute is invalid when applying it to "the facts of [the] plaintiff's concrete case"). *United States v. Lesh*, 107 F.4th 1239, 1246 (10th Cir. 2024) (internal quotation marks omitted). "It's harder to prevail on a facial challenge—unlike an as-applied challenge, a facial challenge fails if at least some constitutional applications of the challenged statute exist." *United States v. Cox*, 906 F.3d 1170, 1178 n.8 (10th Cir. 2018) (internal quotation marks omitted). The district court opted to construe Plaintiffs' vagueness challenge as an as-applied challenge to SEA 24. *See Green Room LLC*, 2024 WL 3817820, at *11. We need not determine, however, whether we agree with the district court's characterization of Plaintiffs' claim as an as-applied challenge. Even if they raise a facial challenge, it would necessarily fail since the less-demanding as-applied

SEA 24 defines *hemp* to exclude "synthetic substance[s]," Wyo. Stat. Ann.
§ 11-51-101(a)(iii), and defines *synthetic substance* as "any synthetic THC, synthetic
cannabinoid or any other drug or psychoactive substance," *id.* § 11-51-101(a)(viii).
The district court said that the word *psychoactive* "modifies all terms in the
definition," *Green Room LLC*, 2024 WL 3817820, at *13; and Plaintiffs appear to
concede as much on appeal, *see* Aplt. Br. at 33; Aplt. Reply Br. at 13. They therefore
focus on the alleged vagueness of the term *psychoactive*. Although CBD is generally
not thought of as being psychoactive, *see supra* n.7, Plaintiffs appear to argue that the
substance could be considered *psychoactive* under SEA 24 depending on how that
term is defined. And because the statute does not define *psychoactive*, they say that it
is unconstitutionally vague.

But "[p]leading an adequate void-for-vagueness challenge requires something
beyond merely claiming that a word is vague." *Wyo. Gun Owners*, 83 F.4th at 1241
(on preenforcement review, concluding that a Wyoming statute creating an
exemption from campaign-finance disclosure requirement for an "internal
communication of [an] entity which is distributed only to *members* or employees of
the entity" was not unconstitutionally vague merely because the statute did not define
the word *member* (emphasis added)). Simply alleging that Defendants "might apply

---

challenge fails. *See Cox*, 906 F.3d at 1178–79 n.8 ("[T]he failure of an as-applied
challenge shows that the statute has at least some constitutional applications, spelling
the end of any facial challenge." (internal quotation marks omitted)).

26

an esoteric definition of the term 'member'" was not enough; indeed, "the same allegation could be made of most words and phrases across any statute." *Id.*

We think that *psychoactive*, like the word *member* in *Wyoming Gun Owners*, is not unconstitutionally vague; in particular, even though Plaintiffs have waived their arbitrary-enforcement argument for vagueness, *see* n.10, *supra*, we note that the word *psychoactive* does not "readily invite a string of different applications that would encourage arbitrary or discriminatory enforcement." 83 F.4th at 1241. A common understanding of the word *psychoactive* is "[i]nfluencing the mind or mental processes." Webster's II New College Dictionary (1st. ed. 1995) at 893; *see* United States Department of Justice/Drug Enforcement Administration, Drug Fact Sheet (2020), https://www.dea.gov/sites/default/files/2020-06/Marijuana-Cannabis-2020_0.pdf [https://perma.cc/ZC59-4BSK] (equating *psychoactive* and "mind-altering" in discussing marijuana). The district court also found that *psychoactive* "is a term recognized in the hemp industry," and Plaintiffs do not contest this finding on appeal. *Green Room LLC*, 2024 WL 3817820, at *13. Further, SEA 24 itself provides guidance on the meaning of *psychoactive*. A chain of cross-references strongly suggests that the word has its common meaning. To begin with, the statute's definition of *THC* includes "*[p]sychoactive* analogs of tetrahydrocannabinol as defined by [Wyo. Stat. Ann. §] 14-3-301(a)(xi)." Wyo. Stat. Ann. § 11-51-101(a)(vii)(B) (emphasis added). The referenced statute then, in turn, defines *analog*, in part, as a substance "[t]hat has a stimulant, depressant or hallucinogenic effect on the central nervous system that is *substantially similar to or greater* than the

27

stimulant, depressant or hallucinogenic effect on the central nervous system of a controlled substance listed under [Wyo. Stat. Ann. §] 35-7-1014(d)(xiii) or (xxi) [the portions of Schedule I of Wyoming's Controlled Substances Act relating to marijuana and THC]." *Id.* § 14-3-301(a)(xi)(B). We think a reasonable reader of the Wyoming statute would take the hint and conclude that psychoactive substances are those that affect the mind in ways similar to marijuana and other controlled substances. Indeed, the state government has adopted that view. Defendants have "affirmatively agreed CBD is not banned" under SEA 24. *Green Room LLC*, 2024 WL 3817820, at *12.

At most, Plaintiffs raise nothing more than a routine question of statutory interpretation (that is, what does *psychoactive* mean in SEA 24?). If a statute could be struck down just because it is amenable to different interpretations, very few would pass constitutional muster. *See Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1305 (D.C. Cir. 2023) ("[T]he fact that a statutory construction question may be difficult or unresolved does not make the law unconstitutionally vague. Otherwise, countless laws would be invalidated."); *Mumad v. Garland*, 11 F.4th 834, 838 (8th Cir. 2021) ("[A] statute is not necessarily void for vagueness simply because it may be ambiguous or open to two constructions." (internal quotation marks omitted)); *Burgess v. Ryan,* 996 F.2d 86 180, 185 (7th Cir. 1993) ("[S]tatutes do not become unconstitutionally vague just because they require judicial interpretation.").

Moreover, "principles of federalism require us to tread especially carefully when reviewing a state law where," as here, "the state courts have not had an

28

opportunity to give the law a construction that will produce adequate clarity." *Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021) (internal quotation marks omitted) (on preenforcement review, rejecting facial void-for-vagueness challenge against Indiana statute requiring physicians to report adverse conditions arising from abortion procedures). "The enforcement of [a statute] will inevitably present many uncertainties at the margins, but the resolution of those edge questions arising from the enforcement of a state law is a principal role of the state's courts" *Id.* at 605 (brackets and internal quotation marks omitted); *cf. Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975) ("[T]he [Supreme] Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts. . . .").

We affirm the district court's dismissal of Plaintiffs' vagueness claim.

### B. Motion for Preliminary Relief

Finally, we dismiss Plaintiffs' appeal of the district court's denial of their motion for a temporary restraining order or preliminary injunction. That appeal has been mooted by the court's subsequent dismissal of Plaintiffs' complaint. *See Baker v. Bray*, 701 F.2d 119, 122 (10th Cir. 1983) (holding that a district court's dismissal of a claim "certainly moot[s]" a request for a preliminary injunction based on that claim); *Hernandez v. Grisham*, No. 20-2176, 2022 WL 16941735, at *7 (10th Cir. Nov. 15, 2022) ("Even if we reversed the district court's denial of the Plaintiffs-Appellants' motion for a preliminary injunction, it would have no effect in the real

29

world because Plaintiffs-Appellant[s'] grievances regarding that denial have been superseded by the district court's final order dismissing Plaintiffs-Appellants' claims on the merits." (brackets and internal quotation marks omitted)). And "[w]e have no subject-matter jurisdiction if a [cause of action] is moot." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).

## III.    CONCLUSION

We **AFFIRM** the district court's dismissal of Plaintiffs' complaint and **DENY** Appellants' Motion to Supplement the Record.